## State of Connecticut *v.* Lufti Zeko

Cotter, C. J., Loiselle, Bogdanski, Longo and Peters, Js.

Argued November 7, 1978—decision released January 9, 1979

*Alphonse DiBenedetto,* public defender, for the appellant (defendant).

*Ernest J. Diette, Jr.,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *John R. Redway,* assistant state's attorney, for the appellee (state).

BOGDANSKI, J.  In May of 1976, the defendant was tried and found guilty of the crime of failure to appear, in violation of § 53a-172 of the General Statutes.[1]  He appealed from the judgment rendered, alleging that the trial court erred in denying his pretrial motions, in certain evidentiary rulings, and in its charge to the jury.  The defendant also challenges the constitutionality of § 53a-172.

The facts leading up to the above offense may be summarized as follows: In July of 1974, the defendant was charged with the crime of arson in the third degree, a felony, and bail was set in the amount of $10,000.  A bond was posted and the defendant was released from custody.  In May of 1975, the state proceeded to trial in the arson case.  After one week of trial during which extensive testimony was taken, lengthy cross-examination was conducted, and an offer of proof as to other fires was made by the state, and before the state had rested its case, the defendant failed to appear in court.  The court inquired as to the defendant's whereabouts and was advised by his attorney that neither he nor the defendant's wife knew where he was or the reason for his absence.  The court thereupon declared a mistrial over objection by the state.

When the defendant subsequently returned to the area, he phoned his bondsman to tell him that he was back and asked if he would be willing to post bond again if he turned himself in.  In that conversation with his bondsman the defendant admitted

---

[1] "[General Statutes] Sec. 53a-172.  FAILURE TO APPEAR IN THE FIRST DEGREE:  CLASS D FELONY.  (a) Any person who, while charged with the commission of a felony and while out on bail or released under other procedure of law, wilfully fails to appear when legally called according to the terms of his bail bond or promise to appear, is guilty of failure to appear in the first degree.  (b) Failure to appear in the first degree is a class D felony."

that he knew he had done wrong by running away but that "things had been building up against him." The defendant thereafter entered a plea of not guilty to the crime of failure to appear and the case was placed on the trial list. When the state indicated that it intended to proceed to trial in the failure to appear case before retrying the arson case, the defendant filed a motion for a sequence of trials, which the court, after a hearing, denied.

The defendant claims that he was prejudiced by the court's action in permitting the failure to appear case to be tried before the arson case. He contends that this sequence of trials enabled the state to use the conviction obtained in the failure to appear case as evidence of consciousness of guilt in the arson case and that this was more detrimental to him than would have been the use for impeachment purposes in the trial of the failure to appear case of a conviction for arson obtained in the retrial of the arson case. The defendant argues that the trial court therefore abused its discretion in denying his motion for a sequence of trials.

The order in which cases are called for trial is within the sound discretion of the court and may be set by the court as the ends of justice and the business before it require. *State* v. *Kelly,* 27 N.M. 412, 202 P. 524 (1921); *Stenner* v. *Colorado-Montana Mines Assn.,* 116 Mont. 261, 149 P.2d 546 (1944). Moreover, the state, in the exercise of its prosecutorial function, has considerable latitude as to how and in what manner it shall proceed against an accused. *State* v. *Villafane,* 171 Conn. 644, 664, 372 A.2d 82 (1976). In this case the state indicated to the court that it preferred to proceed first in the failure to appear case because that trial would be less time-consuming, less costly and would require

fewer witnesses than the retrial of the arson case. The trial court found those grounds sufficient to constitute good cause for the state's request. On those facts the court was well within its discretion in denying the motion.

The defendant next argues that the court should have suppressed the statements which he made to his bondsman. He claims that the bondsman did not give him his *Miranda* warnings before talking with him and that the defendant's statements should, therefore, have been excluded. He also claims that his statements to his bondsman should be privileged communications, such as is the case between attorney and client. Neither argument has merit.

At the time that he made the statements the defendant was not in police custody. The person to whom he made the statements was neither a police officer nor a member of the prosecutor's office. *Miranda* warnings were not, therefore, necessary. In this state, as in most states, communications which are deemed privileged from disclosure are founded upon statutory authority. We find no bondsman-client privilege in the statutes of this state, nor does the defendant point to any authority for such a claimed privilege.

Moreover, the exclusionary rule of *Miranda,* enforcing adherence to the intendment of the fifth amendment, has long been construed as a restraint only upon the activities of a sovereign authority, and not as a limitation upon other than governmental agencies. *Burdeau* v. *McDowell,* 256 U.S. 465, 475, 41 S. Ct. 574, 65 L. Ed. 1048 (1921); cf. *United States* v. *Blum,* 329 F.2d 49, 52 (2d Cir. 1964), cert. denied, 377 U.S. 993, 84 S. Ct. 1920, 12 L. Ed. 2d 1045 (1964). This court has recently held

that incriminating statements made by a defendant are admissible in evidence, whether or not the *Miranda* warning has been given, when the statements were not made during the course of a "custodial interrogation." *State* v. *Smith,* 174 Conn. 118, 120–21, 384 A.2d 347 (1977). This principle has repeatedly been affirmed by decisions of the United States Supreme Court, most recently in *Oregon* v. *Mathiason,* 429 U.S. 492, 97 S. Ct. 711, 50 L. Ed. 2d 714 (1977). Courts in this and other jurisdictions have often held that where statements are made to persons who are not law enforcement officers or their agents, there is no "custodial interrogation" within the meaning of *Miranda,* and therefore such statements need not be suppressed. See *United States* v. *Antonelli,* 434 F.2d 335, 337 (2d Cir. 1970). The trial court therefore did not err in denying the motion to suppress.

The defendant further claims that the conviction should be reversed on the ground that the trial court "lost jurisdiction" because the surety bond, for the violation of which he was charged, was defective in that it did not contain the appropriate certification or acknowledgement. There is no question but that the court had jurisdiction over the person of the defendant. Nor can it be seriously claimed that the court lacked the power to hear felony cases, such as was involved in the prosecution under § 53a-172 of the General Statutes. The defendant's claim, though framed as a jurisdictional issue, is in reality more in the nature of an evidentiary objection and, as such, should have been raised at trial by the defendant.

At trial the defendant objected to the admission into evidence of the appearance bond only on the

grounds that it was not admissible as a judicial record. As to that issue, the record reveals that the appearance bond was in the defendant's court file, and was identified by the clerk as a business entry prepared and kept in the normal course of business by the clerk's office of the Superior Court. That foundation was clearly sufficient to warrant the admission of the bond into evidence as a judicial record. See *Brockett* v. *Jensen,* 154 Conn. 328, 336, 225 A.2d 190 (1966) (judicial notice taken of file in declaratory judgment action); *Wawrzynowicz* v. *Wawrzynowicz,* 164 Conn. 200, 202, 319 A.2d 407 (1972) (court took judicial notice in declaratory judgment action that judgment in divorce action had assigned bank account).

The defendant claims that there was error in the court's instruction on the definition of "wilfulness" as that term is used in § 53a-172. The record reveals that this issue was not raised nor ruled upon by the trial court. This court will not review claimed errors on the part of the trial court unless there has been a compliance with the provisions of Practice Book § 3063, effective July 1, 1978.[2] See *State* v. *Evans,* 165 Conn. 61, 65, 327 A.2d 576 (1973).

The defendant's final claim involves a challenge to the constitutionality of § 53a-172. The defendant argues that § 53a-172 is inconsistent with our decision in *State* v. *Parham,* 174 Conn. 500, 391 A.2d 148 (1978). We do not agree. In *Parham,* supra, we held that a defendant who voluntarily absents himself from trial may have waived his con-

---

[2] "[Practice Book, 1978] Sec. 3063. ERRORS CONSIDERED. The supreme court shall not be bound to consider any errors on an appeal unless they are specifically assigned or claimed and unless it appears on the record that the question was distinctly raised at the trial and was ruled upon and decided by the court adversely to the appellant's claim, or that it arose subsequent to the trial."

stitutional right to be present at trial. Section 53a-172, as previously noted, makes it a felony for a defendant who has been *released on bond* to *fail to appear when legally called* upon to do so. We see no inconsistency between this statute and our holding in *Parham*. The defendant in this case was being tried for failure to appear when legally called according to the terms of his bail bond; he was not being tried for failure to be present at trial. The holding in *Parham* is, therefore, inapplicable on the facts of the present case.

In attacking the constitutionality of the statute the defendant bears a heavy burden of proof. The rule is that every intendment in favor of constitutionality will be made by the court and that invalidity must be established beyond a reasonable doubt. *State* v. *Rao,* 171 Conn. 600, 602–603, 370 A.2d 1310 (1976) ; *State* v. *Clemente,* 166 Conn. 501, 506, 353 A.2d 723 (1974). The defendant concedes, as he must, that the legislature has the power to make criminal a defendant's failure to live up to his promise to appear in court when legally called. "To be constitutionally valid, a regulation made under the police power must have a *reasonable relation* to the public health, safety, morality and welfare." (Emphasis added.) *State* v. *Gordon,* 143 Conn. 698, 703, 125 A.2d 477 (1956) ; *Figarsky* v. *Historic District Commission,* 171 Conn. 198, 207, 368 A.2d 163 (1976). That the state has a valid interest in assuring the smooth functioning of its courts cannot seriously be questioned. Nor can it seriously be claimed that the present statute is not reasonably related to that interest.

There is no error.

In this opinion the other judges concurred.